# Roberts *versus* Roberts.

1. Pending proceedings instituted by a wife for divorce *a mensa et thoro* and alimony, the husband procured a law divorcing them absolutely. *Held*, that the divorcing act was evidence in the proceedings.

2. It is not to be presumed that the legislature acted for the causes set forth in the libel of the wife.

3. Sending up to the Supreme Court only so much of the charge as is contained in the answer to a point may do injustice both to the judge below and the interests of justice. The answers to points do not exhibit the views of the judge, as is done in a single and harmonious charge.

January 28th and February 8th 1867. Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

[Roberts *v.* Roberts.]

Error to the Court of Common Pleas of *Philadelphia*.

This was a proceeding for divorce *a mensa et thoro* by Emily Roberts against William Roberts. The libel was filed August 18th 1864; it set forth the marriage of the parties in December 1824 and desertion by the husband from about the 1st day of May 1864.

The answer of the respondent, denying some of the allegations of the libel, averred that a deed of separation between the parties was executed on the 8th of October 1860, which was subsisting and valid when the libel was filed; and also that they were divorced by Act of Assembly passed March 24th 1865.

The libellant replied, admitting the deed of separation, and that in pursuance of it the parties lived separately for a short time; averred that by mutual consent they afterwards lived together as husband and wife until about the 1st of May 1864, and that, therefore, the deed became null and void; that the Act of Assembly to divorce them is unconstitutional, that she had no notice of the application for the act. A rejoinder was filed traversing the allegations of the replication, and on the 1st of July 1865 an issue was ordered.

On the trial before Allison, A. J., there was much testimony given as to the separation and re-cohabitation, the desertion of the husband and his pecuniary means.

The respondent offered in evidence the divorcing act, viz.:—

" An Act to annul the marriage contract between William Roberts and Emily Roberts.

" Section 1. Be it enacted, &c., That the marriage contract entered into between William Roberts and Emily Roberts, his wife, in the county of Philadelphia and state of Pennsylvania, be and the same is hereby annulled and made void, and the said parties released, set free and discharged from said contract and the duties and obligations thereunder, as fully, effectually and absolutely as if said contract had never been made."

The evidence was rejected and exception taken.

The respondent then called William F. Smith, Chairman of the Committee on Divorces of the legislature of 1865, who testified as to the mode of proceeding in the legislature and stated that a petition for this divorce had been before the committee; that facts contained in depositions handed to him were read to the committee; that the libel and subpœna in divorce were before the committee; other evidence as to loss of petition was given. Smith also stated that " the causes and grounds upon which the Committee on Divorces acted were the grounds and causes stated in this petition of William Roberts for a divorce."

He was then asked what were the causes and grounds stated in the petition. The question was overruled and an exception taken. Respondent offered to prove that the divorce was not in a case

[Roberts *v.* Roberts.]

where the courts can decree a divorce.  The offer was rejected and an exception taken.

The respondent submitted several points; the following only, with their answers, are referred to in the opinion in the Supreme Court:—

2. That a reconciliation, such as will avoid the effect of said deed of separation, must be proved by the libellant; that it is a question of intention, and to produce it both parties must have intended it, as it could not have been produced against the will or purpose of either party.

Answer: "Affirmed.  To avoid this deed it was not enough that one should seek to avoid it."

3. That the jury cannot infer a reconciliation save as based upon the facts which have appeared in proof.

Answer: "Affirmed."

5. That though the respondent did visit the libellant, if it was for any purpose other than that of being reconciled and living with her as his wife, that fact will not affect said deed; for if he did not intend his visits to avoid said deed they will not.

Answer: "This point affirmed, except so much as reads, 'that fact will not affect said deed; for if he did not intend his visits to avoid said deed they will not.'  This I decline to affirm, as reconciliation is not a question of intention.  Parties may be reconciled so as to avoid a deed of separation though they did not intend it.  The question for the jury is, Were the parties reconciled to each other or not?"

7. That said deed of separation being the deliberate act of the parties, the party who seeks to avoid it must show that both parties agreed to avoid it, and though this may be shown by acts, yet those acts must be unequivocal in their effects upon such deed,—must be such that no other inference can be drawn from them than that the parties intended to avoid said deed.

Answer: "I decline to charge as requested in this point, except as to the legal effect of their acts.  If there was a reconciliation the deed is a nullity; if not it is in force."

8. That the jury are not to presume against said deed; but rather in its favor, as the deliberate act of the parties, recognising the fact from experience that they could not live together in peace, and it should not be declared void except upon satisfactory proof that the parties had changed their minds, agreed to live together as man and wife and that they actually carried that agreement into action.

Answer: "This deed should not be avoided if the parties did not become reconciled."

10. It being the law that deeds of separation of husband and wife are valid and effectual, both at law and in equity, if the object be actual and immediate separation, neither should receive

[Roberts v. Roberts.]

the aid of the court and jury in an attempt to violate it, especially if it be reasonable and give the wife an adequate support.

Answer: "Affirmed."

There was a verdict for the libellant, and the court decreed a divorce from bed and board, and alimony at $520 per annum.

The errors assigned were the rejection of the evidence, the answers of the court to the respondent's 5th and 7th points and the decree.

*H. T. King* and *Brewster*, Attorney-General, for plaintiff in error.—A legislative divorce is a law. To make an act of the legislature void it must be clearly not an exercise of legislative power: Sharpless v. Mayor, 9 Harris 147; Const. of Penna., art. 1, § 14; Jones v. Jones, 2 Jones 350; Shollenberger v. Brinton, 2 P. F. Smith 57, per Strong, J.; Commonwealth v. Hartman, 5 Harris 119; Starr v. Pease, 8 Conn. 541; Dartmouth College v. Woodward, 4 Wheat. 518; 2 Kent Com. 107; Bishop on Marriage and Divorce, §§ 784, 794; Wright v. Wright, 2 Maryland 432; 16 Maine 479; Levins v. Sleator, 2 Iowa 604.

The position that the court had obtained jurisdiction, and therefore the legislature could not interfere, is founded in mistake. That was for a *suspension* of the marital relation; the legislative act was its total *destruction*. Gaines v. Gaines, 9 B. Monroe 295, does not support this position: Bingham v. Miller, 17 Ohio 415. The burden of showing a divorce act unconstitutional rests upon him who contests it.

Deeds for separation of husband and wife are valid if their object be actual and immediate: Hutton v. Hutton, 3 Barr 100. Reconciliation is therefore a question of intention. Living under the same roof will not effect it, if they are in a state of hostility: Bateman v. Olivia, 1 Dow 235; Hindley v. Westmeath, 6 B. & C. 200; Fletcher v. Fletcher, 2 Cox 105; Sheltham v. Gregory, 2 Wend. 422; Corbett v. Pretnitz, 1 T. R. 5; 2 Co. Inst. 436; Robbarts v. Robbarts, 9 S. & R. 91; Breinig v. Breinig, 2 Casey 161.

*G. L. Crawford* and *J. E. Latta*, for defendant in error.—The legislature cannot grant divorces when the courts have power: Const. Penna., art. 1, § 14; art. 11, § 9. Nor pass a law impairing the obligation of a contract: Art. 9, § 17, Const. U. S.; Art. 1, § 9. Marriage is a contract, *publici juris*, which cannot be abrogated without cause or consent of the parties by the will of the legislature: Cabell v. Cabell, 1 Metc. (Ky.) R. 319; Dartmouth College v. Woodward, 4 Wheat. 628, 695; Bingham v. Miller, 17 Ohio 445; State v. Fry, 4 Missouri 120; Maguire v. Maguire, 7 Dana 184; Bartholomey v. Johnson, 3 B. Mon. 90;

[Roberts v. Roberts.]

Gaines v. Gaines, 9 Id. 295; Ponder v. Graham, 4 Fla. 23; Richardson v. Wilson, 8 Yerg. 72; Holmes v. Holmes, 4 Barb. 301; Jones v. Jones, 2 Jones 353-4; 2 Kent Com. 105, 106; Bishop Mar. and Div. §§ 688, 689, 690; Townsend v. Griffin, 4 Harrington 440.

The power of the legislature to grant divorces is a limited one. The legislature cannot go beyond adding a legal sanction to a moral obligation: Bolton v. Johns, 5 Barr 149; Reiser v. Saving Fund, 3 Wright 145; Menges v. Dentler, 9 Casey 495.

Tribunals of limited jurisdiction must show on the face of their proceedings that their act is within the scope of their authority, else the act is void: Kemp v. Kennedy, 1 P. C. C. R. 36; 9 Wheat. 541; Jones v. Jones, 2 Jones 355.

The jurisdiction of the court having attached in proceedings in divorce, the respondent cannot resort to another tribunal: Gaines v. Gaines, 9 B. Mon. 295. The respondent's obtaining the act under the circumstances was a fraud in him which deprived him of the benefit of it: Bishop Mar. and Div. §§ 691, 692; Sunb. and E. Railroad v. Cooper, 9 Casey 283; Com. ex rel. Crosse v. Halloway, 8 Wright 210; Levins v. Sleator, 2 Greene (Iowa) 605.

The opinion of the court was delivered, March 11th 1867, by

AGNEW, J.—The exclusion from the evidence of the act of the legislature divorcing these parties from the bond of matrimony, requires a reversal of the judgment. This exclusion assumes that the cause of divorce fell wholly within the jurisdiction of the court, or that no ground whatever existed. But in the opinion in the case of Cronise v. Cronise, just read, we held that a special divorce law is primâ facie evidence that it was passed for some just cause within the province of the legislature, the question whether the cause was actually within the jurisdiction of the court being a subject of proof upon the trial. We have also disposed of the objection made to the power of the legislature to pass a special act of divorce.

Nor does the fact that the law was passed after Mrs. Roberts had instituted this proceeding for a divorce from bed and board, and for alimony, justify the rejection of the evidence. This is to assume that the legislature acted upon the same causes involved in this proceeding. But it does not follow that the legislature must have acted upon the ground set forth in the libel, and not upon those within the circle of its own power. This was a fact which could not be tested until the act had gone in evidence. There was error therefore in rejecting the evidence. In this case we have another instance of the injustice which may be done both to the judge and to the interests of justice by sending up only so much of the charge as is contained in the answer to the point. Points are generally isolated and often abstract propositions

framed, not so much upon the real aspects of the evidence, as they are to express the extremes of the case, and to lead to the expression of opinions upon the theoretical rather than the practical questions of the cause. The answers to them do not therefore exhibit the true views of the judge upon the case before him as is done in a single and harmonious charge. The answer of the learned judge to the defendant's 5th point looks like an instruction to the jury that reconciliation is not a question of intention. This, and the answer to the 7th point probably, we might be compelled to say, tended to confuse, and were therefore error. Had his whole charge been before us, I doubt not his meaning would have been clear and free from error, as the answers to the 2d, 3d, 8th and 10th points tend to show. But as the case goes back upon the refusal of the court to receive the Act of Assembly in evidence, these apparent incongruities will no doubt be remedied in another trial. The other errors need no notice.

The judgment is reversed, and a *venire de novo* is awarded.